UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUIDO D'ANGELO,

                                Plaintiff,

       -v-

ANTHONY ANNUCCI, COMMISSIONER OF
NYSDOCCS; ANN MARY T. SULLIVAN,
COMMISSIONER OF NYSOMH; GILBERT
TAYLOR, COMMISSIONER OF NYCDHS; DANIEL
NICKOLAS, NYCDHS; GLADIS SANTANA, ASST.
COMMISSIONER OF NYCDHPD; NOEL
BRENDON, PAROLE OFFICER OF NYCDOP; S.
AMOIA, SUPERINTENDENT OF GROVELAND
CORRECTIONAL FACILITY; J. LAGEROGIA,
SORC, PAROLE SPECIALIST OF GROVELAND
CORRECTIONAL FACILITY; L. WISNIEWSKI,
ORC COUNSELOR OF GROVELAND
CORRETIONAL FACILITY; M. CRANE, ORC-TSC
COUNSELOR OF GROVELAND CORRECTIONAL
FACILITY; D. McGEE, MSW, SOCIAL WORKER
OF GROVELAND CORRECTIONAL FACILITY;
GRAHAM, SUPERINTENDENT OF AUBURN
CORRECTIONAL FACILITY; ROBERT F.
CUNNINGHAM, SUPERINTENDENT OF
FISHKILL CORRECTIONAL FACILITY;
FERNANDEZ, ORC COUNSELOR OF FISHKILL
CORRECTIONAL FACILITY; MALONE,
DISCHARGE PLANNER OF FISHKILL
CORRECTIONAL FACILITY; JOHN DOE,
SUPERINTENDENT OF MID-STATE
CORRECTIONAL FACILITY; DONAHUE, ORC
COUNSELOR OF MID-STATE CORRECTIONAL
FACILITY; W. KEYSER, SUPERINTENDENT OF
SULLIVAN CORRECTIONAL FACILITY;
GALLIGAN, ORC COUNSELOR OF SULLIVAN
CORRECTIONAL FACILITY; ROSS, DISCHARGE
PLANNER OF SULLIVAN CORRECTIONAL
FACILITY,

                                Defendants.

Case No. 16-CV-6459 (KMK)

OPINION & ORDER

Appearances:

Guido D'Angelo
Elmhurst, NY
*Pro se Plaintiff*

Kristen R. Vogel, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants Anthony Annucci, Ann Marie Sullivan, Sandra Amoia, Linda Wisniewski, Matthew Crane, D. McGee, Harold Graham, Robert Cunningham, Inez Fernandez, Matthew Thoms, Michael Donahue, William Keyser, Patricia Galligan, and Carla Steinberg-Ross*

Lesley B. Mbaye, Esq.
New York City Law Department
New York, NY
*Counsel for Defendants Gilbert Taylor, Daniel Nicholas, and Gladis Santana*

KENNETH M. KARAS, District Judge:

Guido D'Angelo ("Plaintiff"), proceeding pro se, brings this Complaint, pursuant to 42 U.S.C. § 1983, against Anthony Annucci ("Annucci"), Ann Marie Sullivan ("Sullivan"), Noel Brendon ("Brendon"), Sandra Amoia ("Amoia"), J. Lagerogia ("Lagerogia"), Linda Wisniewski ("Wisniewski"), Matthew Crane ("Crane"), D. McGee ("McGee"), Harold Graham ("Graham"), Robert Cunningham ("Cunningham"), Inez Fernandez ("Fernandez"), Fishkill Correctional Facility Discharge Planner Malone ("Malone"), Matthew Thoms ("Thoms"), Michael Donahue ("Donahue"), William Keyser ("Keyser"), Patricia Galligan ("Galligan"), and Carla Steinberg-Ross ("Steinberg-Ross") (collectively, "State Defendants"), as well as Gilbert Taylor ("Taylor"), Daniel Nicholas ("Nicholas"), Gladis Santana ("Santana") (collectively, "City Defendants"), alleging that both State and City Defendants violated his constitutional rights by holding him in custody beyond the date of his conditional release. (Dkt. No. 2.) Before the Court are both State and City Defendants' Motions To Dismiss Plaintiff's Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6) ("Motion").  (Dkt. Nos. 43, 47.)[1]  For the following reasons, the

Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true for the

purpose of resolving the instant Motion.[2]  Plaintiff was sentenced to a period of incarceration of

18 to 40 years by the Kings County Supreme Court.  (*See* Compl. 11 (Dkt. No. 2).)  Plaintiff

does not identify the date on which he was sentenced, but notes that the maximum date of

expiration of his sentence was December 26, 2027.  (*See id.* at 11–12.)  On April 2, 2014, the

"Time Allowance Committee" granted Plaintiff his conditional release to parole, (*see id.* at 14),

with an anticipated conditional release date of August 26, 2014, (*see id.* at 11).[3]  Plaintiff's

conditional release was approved by Annucci, the Commissioner of the New York State

Department of Corrections and Community Supervision ("DOCCS"), or his designee, as well as

<hr />

[1] All Defendants except for Brendon, Malone, and Lagerogia have filed Motions.  As noted below, Brendon, Malone, and Lagerogia have not been served in this case.  State Defendants also note that Lagerogia has not been identified as a person who currently is or was employed by the New York State Department of Corrections and Community Supervision ("DOCCS") or the New York State Office of Mental Health ("OMH") during the relevant time. (State Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("State Mem.") 1 n.1 (Dkt. No. 44).)

[2] For ease of reference, given Plaintiff's use of a standard complaint form with additional pages attached, the Court cites to the ECF-generated page numbers stamped at the top of Plaintiff's Complaint.

[3] Plaintiff's conditional release date was determined by identifying the date when the sum of Plaintiff's good-time credits became identical to the length of the unserved portion of his sentence.  *See* N.Y. Penal Law § 70.40(1)(b).

Amoia, the Superintendent of Groveland Correctional Facility ("Groveland")—where Plaintiff was then incarcerated—and an unnamed Senior Parole Officer at Groveland. (*See id.* at 14.)[4]

On May 8, 2014, Plaintiff met with Wisniewski, his Offender Rehabilitation Coordinator ("ORC") at Groveland, who conducted a "risk assessment." (*Id.* at 14–15.) Wisniewski concluded that Plaintiff was "less likely to reoffend," and that "no civil commitment was necessary," because Plaintiff had no "sexual deviancy." (*Id.* at 15.)[5] At this same meeting, however, Wisniewski also informed Plaintiff that she "did not expect . . . Plaintiff to be released" on his conditional release date because Plaintiff must first "submit for SARA [Sexual Assault Reform Act] compliant housing." (*Id.* at 15–16.)[6] Plaintiff acknowledged that he was required to live in SARA compliant transitional housing, but alleges that his status as an indigent inmate made it "extremely difficult" to locate such housing without assistance from DOCCS. (*Id.* at 16.)

Initially, Plaintiff believed that Bellevue Men's Shelter ("Bellevue"), or one of Bellevue's SARA compliant shelters, would serve as appropriate transition housing because Bellevue "temporar[ily] house[d] sex offenders" such as Plaintiff until permanent SARA compliant housing became available. (*Id.* at 17.) Yet, in June 2014, "ORC/Parole" informed

---

[4] Plaintiff cites to an "Exhibit A" as support for this allegation, but Plaintiff attached no exhibits to his Complaint. However, for the purpose of deciding these Motions, this Court adopts Plaintiff's allegation that these individuals approved his conditional release date of August 26, 2014.

[5] Plaintiff cites to an "Exhibit B" which purportedly was a copy of the risk assessment. However, there is no Exhibit B attached to the Complaint. Again, for the purposes of these Motions, this Court adopts Plaintiff's allegations regarding the May 8, 2014 risk assessment.

[6] Executive Law § 259-c(14), enacted as part of SARA, prohibits recently released sex offenders from living or spending significant time within 1,000 feet of schools or services that primarily serve children. *See* N.Y. Exec. Law § 259-c(14); *see also* N.Y. Comp. Codes R. & Regs. Titl. 9 ("NYCRR") § 8003.3 (authorizing special conditions on release).

Plaintiff that DOCCS was no longer releasing sex offenders to Bellevue and, therefore, Plaintiff could not be released there on his conditional release date. (*Id.*) Throughout June of 2014, Plaintiff submitted letters to DOCCS from Fortune Society and Housing Works, organizations that had "informed Plaintiff that they had available SARA compliant transitional housing." (*Id.*) Nonetheless, "[]DOCCS failed to make preparations . . . for Plaintiff's release" with either organization and "denied Plaintiff's release to either one." (*Id.* at 17–18.) Plaintiff notes that he has "continuously complained" to the Commissioner of DOCCS (Annucci), and the Superintendents at Groveland (Amoia), Auburn Correctional Facility (Graham), Fishkill Correctional Facility (Cunningham), Mid-State Correctional Facility (Thoms), and Sullivan Correctional Facility (Keyser) regarding his continued confinement. (*Id.* at 18.) Plaintiff has also filed complaints with DOCCS' transitional services department and the New York State Office of Mental Health ("OMH") discharge planning department. (*See id.* at 16.) Plaintiff did not receive responses to any complaints regarding his continued confinement, or his requests for assistance in finding any form of SARA compliant housing. (*Id.* at 16, 18.) Plaintiff also claims that certain state regulations require placement in temporary housing for homeless inmates, including sex offenders. (*Id.* 15–16 (citing 9 NYCRR § 8002.7(d)(3).) As a result, Plaintiff seeks damages for his mental and physical anguish, as well as injunctive relief, to remedy the alleged violation of his Fifth, Eighth, and Fourteenth Amendment rights. Plaintiff was ultimately released from custody at Sullivan Correctional Facility on February 14, 2017. (Letter from Guido D'Angelo to Court (Feb. 22, 2017) ("Feb. 22 D'Angelo Letter") 1 (Dkt. No. 11); New York State Department of Corrections Inmate Locator, http://nysdoccslookup.doccs.ny.gov/ (last visited Dec. 8, 2017) (DIN 88T0166).)

B.  Procedural History

Plaintiff filed his Complaint on August 12, 2016, (*See* Compl.), and Plaintiff's request to proceed in forma pauperis was granted on December 29, 2016, (*see* Order Granting IFP Application (Dkt. No. 7).)  On October 28, 2016, Plaintiff filed a Motion for Appointment of Counsel, (*see* Dkt. No. 5), which the Court denied without prejudice on April 17, 2017, (*see* Order (Dkt. No. 31).)  Counsel for City Defendants submitted a letter to the Court on May 2, 2017, requesting permission to file a Motion To Dismiss on behalf of the City Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Letter from Lesley B. Mbaye, Esq., to Court (May 2, 2017) (Dkt. No. 37).)  The State Defendants submitted a similar letter on May 9, 2017.  (*See* Letter from Kristin R. Vogel, Esq., to Court (May 9, 2017) (Dkt. No. 41).)  On May 22, 2017, the Court entered an Order that all Defendants could file their Motions To Dismiss by June 22, 2017, and Plaintiff should respond to any motions by July 22, 2017.  (*See* Mot. Scheduling Order (Dkt. No. 42).)

On June 22, 2017, State Defendants filed their Motion To Dismiss and accompanying papers.  (*See* Dkt. Nos. 44–46.)  Brendon, Malone, and Lagerogia did not join the Motion as they have never been served.  (State Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("State Mem.") 1 n.1 (Dkt. No. 44).)  City Defendants filed a separate Motion To Dismiss and accompanying papers on June 22, 2017 as well.  (*See* Dkt. Nos. 47–50.)  Plaintiff submitted a Motion To Postpone dated July 20, 2017, requesting a "60 to 90 day postponement" to file his response to State and City Defendants' Motions To Dismiss and claiming that he had "no documentation to proceed [with] the Complaint."  (Letter from Plaintiff to Court (July 20, 2017) (Dkt. No. 52).)  On July 26, 2017, the Court denied Plaintiff's request.  (*See* Order (Dkt. No. 53).)  However, on August 9, 2017, the Court determined that this denial had not been mailed to Plaintiff, and thus

reissued its denial of Plaintiff's application. (*See* Order (Dkt. No. 55).) The Court

simultaneously granted Plaintiff 30 days from the date of the August 9, 2017 Memo

Endorsement to file any opposition papers to the State and City Defendants' Motions. (*See id.*)

Plaintiff did not respond to either of the Motions. The Court will therefore consider the Motion

fully briefed, but independently consider the merits of the Motions. *See Goldberg v. Danaher,*

599 F.3d 181, 183 (2d Cir. 2010) (explaining that district courts should consider the merits of a

motion to dismiss rather than automatically grant the motion if a plaintiff fails to respond).

## II. Discussion

### A.  Standard of Review

Both Motions To Dismiss were filed pursuant to Rule 12(b)(6), arguing that Plaintiff

failed to state a claim upon which relief can be granted. (*See* Dkt. Nos. 43, 47.)

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks

omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief

above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal

treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

### B.  Analysis

Plaintiff alleges that State and City Defendants have violated his rights under the Due Process Clause by holding him in custody beyond his conditional release date, (*see id.* at 12–13), which was caused by the State and City Defendants' refusal to assist Plaintiff in locating housing that is compliant with New York Executive Law § 259-c(14), enacted as part of the Sexual Assault Reform Act ("SARA"), as is required by New York law.  *See* 9 NYCRR § 8002.7(d)(3) ("[A]ll social service districts are required by statute, regulation and directive to arrange temporary housing assistance for eligible homeless individuals, including those who are sex offenders.").  Moreover, Plaintiff argues that State Defendants violated the Eighth Amendment based upon the same allegedly improper detention.  (*See* Compl. 14.)

#### 1.  City Defendants' Motion To Dismiss

##### a.  Personal Involvement

City Defendants argue that Plaintiff's claims against them must be dismissed because, "Plaintiff fails to allege the personal involvement of any City Defendant in any conduct whatsoever, much less any alleged violation of [Plaintiff's] rights."  (City Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("City Mem.") 4 (Dkt. No. 48).)

"It is well settled in th[e] [Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

*Brown v. City of New York*, No. 13-CV-6912, 2017 WL 1390678, at *6 (S.D.N.Y. Apr. 17, 2017)

(internal quotation marks omitted). To establish liability, a plaintiff must show that the

defendants "were personally involved in the allegedly unlawful conduct," *id.* at *7, because

"supervisor liability in a § 1983 action depends on a showing of some personal responsibility,

and cannot rest on respondeat superior," *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003)

(italics omitted). Under § 1983, a supervisor may be shown to have been liable in the following

ways:

> (1) actual direct participation in the constitutional violation[;] (2) failure to
> remedy a wrong after being informed through a report or appeal[;] (3) creation of
> a policy or custom that sanctioned conduct amounting to a constitutional
> violation, or allowing such a policy or custom to continue[;] (4) grossly negligent
> supervision of subordinates who committed a violation[;] or (5) failure to act on
> information indicating that unconstitutional acts were occurring.

*Id.* at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright v. Smith*,

21 F.3d 496, 501 (2d Cir. 1994)).[7]

Plaintiff has not alleged any way in which City Defendants were personally responsible

for, or involved in the circumstances that resulted in, his continued incarceration beyond his

conditional release date. None of the three City Defendants is even mentioned by name or

position in the body of the Complaint, which is itself ground for dismissal. *See Manley v.*

*Ramos*, No. 13-CV-2662, 2014 WL 1496094, at *2 (S.D.N.Y. Apr. 16, 2014) (dismissing claims

where the plaintiff "name[d] [police officers] as defendants in the caption, but . . . never

mention[ed] them again in the body of the complaint"); *Ortiz v. Bloomberg*, No. 10-CV-9434,

2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011) (dismissing claims where "the only named

---

[7] Though the decision in *Iqbal*, 556 U.S. 662, has called into question the validity of the *Colon* factors, this Court "has already expressed its agreement with those cases holding that all five categories under *Colon* are still valid unless and until the Second Circuit holds otherwise." *Samuels v. Prack*, No. 13-CV-8287, 2017 WL 934706, at *6 (S.D.N.Y. Mar. 8, 2017).

reference to [certain correctional officers] [was] in the caption of the [c]omplaint, and the only additional references to these defendants [were] merely conclusory statements about their personal involvement and liability").  Further, in the sole paragraph in which Plaintiff mentions a City agency, he does so only to assert that the New York City Department of Homeless Services ("DHS") has SARA compliant housing, specifically Bellevue, but not that DHS or any of the City Defendants were denying him placement in that housing.  (*See* Compl. 17.)  Moreover, Plaintiff's only allegation related to this housing is that DOCCS, a state agency unrelated to any City Defendant, "refuses to release Plaintiff" to the available DHS housing.  (*Id.*)  Plaintiff has not suggested the existence of any City policy or custom, let alone one created by City Defendants, which would have resulted in his continued incarceration or denial of his rights under the Due Process Clause.

Accordingly, based on the lack of any claim linking the actions of City Defendants to the injuries allegedly suffered by Plaintiff, City Defendants' Motion To Dismiss is granted.

### 2.  State Defendants' Motion To Dismiss

State Defendants raise multiple arguments in their Motion.  First, State Defendants assert that Plaintiff's claims are barred in their entirety by *Heck v. Humphrey,* 512 U.S. 477 (1994). Second, State Defendants argue that, if not barred by *Heck*, Plaintiff has failed to state a Due Process claim.  Third, State Defendants contend that they are entitled to qualified immunity. (*See* State Mem. 6–15.)  State Defendants also argue that Plaintiff has not pled the personal involvement of the named Defendants.  The Court will address these arguments in turn.  Because the question of qualified immunity is related, in this case, to the adequacy of the allegations, the Court will address the two issues concomitantly.

### a. Application of *Heck v. Humphrey*

State Defendants move to dismiss all of Plaintiff's claims, each of which arises under the Due Process Clause, on the ground that *Heck* requires dismissal of the Complaint. In *Heck*, the Supreme Court held that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok,* 520 U.S. 641, 643 (1997) (quoting *Heck,* 512 U.S. at 487). Moreover, while *Heck* held that the favorable-termination rule is triggered when a prisoner's success would "necessarily demonstrate the invalidity of the *conviction*," 512 U.S. at 481–82 (emphasis added), the Supreme Court has since clarified that *Heck* applies to any challenge to the duration of "confinement" that necessarily implies the invalidity of that confinement, even if that challenge would not implicate the underlying conviction or sentence. *See Wilkinson v. Dotson,* 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."); *Edwards,* 520 U.S. at 648 (finding that a prisoner's claim for money damages alleging that he was deprived of good-time credits without due process necessarily implies the invalidity of the "punishment imposed," meaning the deprivation of the credits). Absent such a showing, a prisoner may only seek relief in the federal courts through a petition for habeas corpus. *See Wilkinson*, 544 U.S. at 81 (holding that habeas corpus is the only remedy available to prisoners seeking to "invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody"); *see also Jenkins v. Haubert,* 179 F.3d 19, 23

(2d Cir. 1999) ("[W]here the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only § 2254(b) with its exhaustion requirement may be employed.").

State Defendants contend that Plaintiff's Complaint fulfills both conditions of the *Heck* rule. First, State Defendants argue, and Plaintiff does not allege otherwise, that Plaintiff's conviction or sentence has not previously been invalidated. In fact, Plaintiff appears to have challenged his continued confinement beyond the date of his conditional release by way of an Order to Show Cause seeking a writ of habeas corpus in state court and relief under N.Y. C.P.L.R. § 78, but that petition was denied. *See D'Angelo v. Graham*, No. 538/15, at 2 (N.Y. Sup. Ct. Apr. 2, 2015) (denying Plaintiff's petition for immediate release from custody by way of his petition for a writ of habeas corpus, as well as his petition for relief under N.Y. C.P.L.R. § 78 alleging failure to comply with 9 NYCRR § 8002.7).[8]

Next, State Defendants argue that Plaintiff's claims, if true, necessarily imply the invalidity of his sentence. According to State Defendants, Plaintiff's allegations ultimately amount to challenges to certain alleged procedural defects that delayed his conditional release and left him in custody for longer than he would have been absent those procedures. (*See* State

---

[8] In adjudicating a Rule 12(b)(6) motion, a district court may consider "matters of which judicial notice may be taken." *Leonard F*, 199 F.3d at 107 (internal quotation marks omitted). "[C]ourts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Sheppard v. Lee,* No. 10-CV-6696, 2011 WL 5314450, at *1 n.2 (S.D.N.Y. Nov. 7, 2011) (taking judicial notice of state court proceedings attached to the motion to dismiss in a § 1983 case), *adopted by,* 2011 WL 6399516 (S.D.N.Y. Dec. 20, 2011); *Faulkner v. Verizon Commc'n, Inc.,* 156 F. Supp. 2d 384, 391 (S.D.N.Y. 2001) (explaining that a court "may take judicial notice of pleadings in other lawsuits attached to the defendants' motion to dismiss, as a matter of public record" (citation omitted.)) Accordingly, the Court takes judicial notice of the Decision, Order, and Judgment of the Supreme Court of Dutchess County, New York regarding Plaintiff's habeas petition and Article 78 proceeding for the purpose of establishing the fact of that litigation. *D'Angelo*, No. 538/15 at 2.

Mem. 8–9.) Ultimately, the crux of Plaintiff's allegations is that DOCCS unlawfully failed to "release [Plaintiff] from prison." (Compl. 13.) Plaintiff further claims that DOCCS "purposely" held him beyond his conditional release date based upon a "prejudic[ial] outlook and discrimination" against Plaintiff due to his prior sex offense. (*Id.*) Were Plaintiff successful in prosecuting these claims, the question is whether that decision would result in his "immediate release from confinement or a shorter stay in prison," *Wilkinson*, 544 U.S. at 82.

In *Ahlers v. Boruch*, No. 04-CV-1747, 2007 WL 2042794, at *4 (E.D.N.Y. July 16, 2007), the court answered affirmatively in a nearly identical factual circumstance. Here, as in *Ahlers*, Plaintiff's conditional release was determined by operation of law on the date his total good behavior time equaled the unserved portion of their term of incarceration. *See* N.Y. Penal Law § 70.40(b); *see also Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 162 (S.D.N.Y. 2007) ("While parole rests in the discretion of the state board of parole, conditional release from an indeterminate sentence is a form of automatic parole." (internal quotation marks omitted)). In *Ahlers*, the court determined that were the plaintiff to succeed in his claim that the defendants "unconstitutionally delayed [the plaintiff's] conditional release by repeatedly refusing to investigate the suitability of the proposed residences that the conditions of his release required," there would be "no constitutional obstacle . . . between [the plaintiff] and release." 2007 WL 2042794, at *4. The court reasoned that such claims do nothing more than "attack procedures that, if struck down, would mean [the plaintiff] could immediately obtain conditional release to parole." *Id.*

Plaintiff here similarly contends that State Defendants unconstitutionally delayed his conditional release by refusing to "provide adequate transitional services," (Compl. 13), and "make [p]reparations with [SARA compliant housing] organizations," (*id.* at 17–18), and thus

failed to assist Plaintiff in "obtain[ing] SARA compliant transitional housing," (*id*. at 13). Moreover, Plaintiff asserts that State Defendants' refusal to assist is rooted in a discriminatory animus towards sex offenders, (*see id*.), which the Court views as an allegation that State Defendants' imposed an "arbitrary and capricious" standard by which they determined whether or not to assist Plaintiff in locating SARA compliant housing, *Ahlers*, 2007 WL 2042794, at *4. If the Court were to find that State Defendants should have located SARA compliant housing, and ceased imposing arbitrary and discriminatory burdens on assistance, there would have been no obstacle for Plaintiff to "immediately obtain conditional release to parole." *Id.* As such, the invalidity of his continued confinement beyond the date of his conditional release is "necessarily impl[ied]" by this Action, and it is therefore barred under *Heck* and its progeny. *Id.*; *see also Marlow v. Fabian*, 676 F.3d 743, 746–47 (8th Cir. 2012) (applying *Heck* bar to a § 1983 action alleging constitutional violations based on imprisonment beyond a supervised release date); *Gastelu v. Breslin*, No. 03-CV-1339, 2005 WL 2271933, at *4 (E.D.N.Y. Sept 12, 2005) ("[A] finding that [the plaintiff's] due process rights were violated by . . . the imposition of . . . procedures used to determine whether he satisfied [the approved-housing] condition . . . would necessarily imply the invalidity of his continued confinement after the expiration of his sentence.")

To the extent that Plaintiff argues that confinement beyond his conditional release date constitutes cruel and unusual punishment under the Eighth Amendment, that claim is similarly barred by *Heck*. To be sure, not all § 1983 claims based on the Eighth Amendment call into question the validity of a plaintiff's conviction. *See, e.g.*, *Channer v. Mitchell*, 43 F.3d 786, 788 (2d Cir. 1994) (per curiam) (holding that a § 1983 claim "stemming from conditions of confinement that allegedly violate the Eighth Amendment" are not per se barred by *Heck*). Here,

however, the entirety of Plaintiff's Eighth Amendment claim rests on the very fact of his confinement past his conditional release date. (Compl. 14. ("[Plaintiff's] [Eighth] Amendment . . . [rights] [are] being violated by []DOCCS because [t]hey are deliberately [sic] and purposely subjecting [Plaintiff] . . . [to] cruel and unusual punishment by detaining him past his conditional release date.").) Nowhere in his Complaint does Plaintiff challenge the *conditions* of his confinement under the Eighth Amendment. Thus, any judgment in favor of Plaintiff on his Eighth Amendment claim would "necessarily imply" the invalidity of confinement which has not yet been invalidated. *Edwards*, 520 U.S. at 648. Accordingly, Plaintiff's Eighth Amendment claims are dismissed as barred by *Heck*.

Moreover, although Plaintiff's release from incarceration might now enable him to file a § 1983 action, his release after the filing of his Complaint is not itself a bar to the application of *Heck* in this case. Plaintiff filed his Complaint on August 12, 2016, (*see* Compl.), but was not released from prison until February 2017, (*see* Feb. 22 D'Angelo Letter 1.) Several district courts in the Second Circuit have held that the *Heck* rule continues to apply to a § 1983 plaintiff's claim so long as the plaintiff was in prison at the time the § 1983 action was commenced. *See Gastelu*, 2005 WL 2271933, at *4 (finding *Heck* applicable so long as the prisoner "was still in prison when he initiated this § 1983 action"); *see also Hamm v. Hatcher*, No. 05-CV-503, 2009 WL 1322357, at *8 n.6 (S.D.N.Y. May 5, 2009) ("[*Heck*] applies to plaintiffs who are incarcerated at the time that they file their [§] 1983 actions, regardless of whether they are later released"); *Rolle v. Connell,* No. 05–CV–991, 2005 WL 3077474, at *3 (N.D.N.Y. Nov. 16, 2005) (same). The Court finds that *Heck* is applicable where Plaintiff was in DOCCS custody at the time he filed his Complaint. Therefore, because Plaintiff's § 1983 Action

"necessarily impl[ies]" the invalidity of his confinement, his claims are barred. *Edwards*, 520 U.S. at 648.

## b. Procedural Due Process

To the extent Plaintiff's procedural due process claim is not barred by *Heck*, the Court finds that Plaintiff has not alleged enough facts to plausibly state such a claim.

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). The statute itself "creates no substantive rights," but merely provides a procedure for redress for the "deprivation[ ] of rights established elsewhere." *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985); *see also Louis v. Metro. Transit Auth.*, 145 F. Supp. 3d 215, 223 (E.D.N.Y. 2015) (same). Thus, to state a claim pursuant to § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (internal quotation marks omitted).

Pursuant to the Due Process Clause of the Fourteenth Amendment, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV; *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (holding that a procedural due process violation arises under the Fourteenth Amendment when a plaintiff has been deprived of a constitutionally protected interest in life, liberty, or property without due process of law). The Due Process Clause protects "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also Zherka v. Ryan*, 52 F. Supp. 3d 571, 582 (S.D.N.Y. 2014) (same). To state a procedural due process claim, a plaintiff "must first establish

that he enjoyed a protected liberty interest." *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998).

If a plaintiff establishes such a protected interest, the next question is whether "the procedures

followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219

(2011).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit

in the word 'liberty,' or it may arise from an expectation or interest created by state laws or

policies." *Wilkinson*, 545 U.S. at 221. "In order for a state prisoner to have an interest in parole

that is protected by the Due Process Clause, he must have a legitimate expectancy of release that

is grounded in the state's statutory scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001)

(per curiam). "Neither the mere possibility of release, nor a statistical probability of release,

gives rise to a legitimate expectancy of release on parole." *Id.* at 171 (citations omitted). While

it is well settled that an inmate has no constitutionally protected interest in the possibility of

parole, or other conditional release from prison, prior to its grant or the expiration of a valid

sentence, *see Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979), it is

an open question in the Second Circuit whether a prisoner has a liberty interest in his or her

conditional release from prison, *see Doe v. Simon,* 221 F.3d 137, 139 (2d Cir. 2000) (refusing to

"reach the thorny question of whether a liberty interest exist[s]" in conditional release); *see also*

*Hayes v. Annucci*, No. 14-CV-8845, 2016 WL 1746109, at *3 (S.D.N.Y. Apr. 29, 2016) ("[T]he

Second Circuit has declined to opine on whether New York recognizes a liberty interest in

conditional release."); *Muhammad v. Evans*, No. 11-CV-2113, 2014 WL 4232496, at *7

(S.D.N.Y. Aug. 15, 2014) (same); *Ahlers*, 2007 WL 2042794, at *5 (same).

Assuming *arguendo* that Plaintiff has adequately alleged sufficient facts to establish such

a liberty interest, as did the Second Circuit in *Doe*, *see* 221 F.3d at 139 ("[E]ven if [a liberty

interest] did [exist,] [the plaintiff] received sufficient process to satisfy his constitutional rights."), it is clear Plaintiff has failed to allege he did not receive the minimum process due under the circumstances. "It is undisputed that under New York law the Board of Parole is entitled to impose conditions on the conditional release of an inmate such as [Plaintiff]." *Id.* *Doe* held that, with regard to what process is due to a prisoner with an approved residence condition for his conditional release, the "minimum" that is required is "notice that [the plaintiff] would not be released without an approved residence, an explanation of why this special condition was being imposed, and an opportunity to dispute the grounds for application of the special condition." *Id.* at 140.

Here, Plaintiff does not allege that he received insufficient notice that an approved, SARA compliant residence would be required for his release based on his prior sex offense; in fact, he acknowledges that he received notice of the condition on May 8, 2014—well in advance of his conditional release date of August 26, 2014. (*See* Compl. 11, 15–16.) Moreover, Plaintiff alleges that he located, and vigorously advocated for, placement in what he claims was SARA compliant transitional housing offered by Fortune Society and Housing Works, (*see id.* at 17–18), indicating that he was not only well aware of the requirement, but that he was "afforded ample opportunities to dispute its application to his case." *Ahlers*, 2007 WL 2042794, at *5. Plaintiff's claim, then, is a challenge to the mere fact of his confinement beyond his conditional release date, and is devoid of any allegations regarding specific deficiencies in the process he was afforded. Therefore, State Defendants are entitled to dismissal of Plaintiff's due process claims on the ground that Plaintiff has failed to state a claim.

<u>c. Qualified Immunity</u>

In the alternative, State Defendants contend that the Complaint should be dismissed on qualified immunity grounds. (*See* State Mem. 9–11.) The doctrine of qualified immunity generally shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). This protection attaches "only if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015) (internal quotation marks omitted). In this context, a court "is guided by two questions: first, whether the facts show that the defendants' conduct violated [the] plaintiffs' constitutional rights, and second, whether the right was clearly established at the time of the defendants' actions." *Golodner v. Berliner*, 770 F.3d 196, 201 (2d Cir. 2014) (alterations and internal quotation marks omitted).

Here, the second prong of the inquiry need not be reached because, as discussed above, Plaintiff has not plausibly pled that State Defendants violated his constitutional rights. *See Posr v. City of N.Y.*, No. 10-CV-2551, 2013 WL 2419142, at *10 n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]aintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014). Nonetheless, even assuming Plaintiff's rights were violated by his detention beyond his conditional release date, qualified immunity would still shield State Defendants from suit. As previously mentioned, whether there is a constitutional liberty interest in conditional release is an open question in the Second Circuit.

*See Doe*, 221 F.3d at 139; *Hayes*, 2016 WL 1746109, at *3; *Muhammad*, 2014 WL 4232496, at *7; *Ahlers*, 2007 WL 2042794, at *5. Thus, it cannot be said that any right to release upon the happening of a prisoner's conditional release date was clearly established at the time of the denial. Accordingly, State Defendants are entitled to dismissal of Plaintiff's due process claim on this independent ground as well. *See McKay v. City of N.Y.*, 32 F. Supp. 3d 499, 510 (S.D.N.Y. 2014) (granting qualified immunity when the case law "provide[s] a basis for reasonable officers to disagree" as to a constitutional requirement); *Estrella v. Menifee*, 275 F. Supp. 2d 452, 460 (S.D.N.Y. 2003) (granting qualified immunity "given the absence of a binding [Second Circuit] decree invalidating" the officials' actions).

### d. Eighth Amendment

Plaintiff also asserts a violation of his Eighth Amendment rights. Again, to the extent that any portion of this claim is not barred by *Heck*, the Court concludes that Plaintiff has failed to sufficiently plead such a claim.

For extended incarceration to rise to the level of an Eighth Amendment violation, it "must . . . be the product of deliberate indifference." *Campbell v. Peters,* 256 F.3d 695, 700 (2d Cir. 2001); *see also Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (same); *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985) ("Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest; otherwise, such detention can be held to be unconstitutional only if it violates due process." (citations omitted)).

Plaintiff does allege that he notified various officials about his prolonged incarceration. For example, Plaintiff alleges that he "continuously complained" to DOCCS Commissioner Annucci; Superintendents Amoia, Graham, Cunningham, Thoms, and Keyser; and DOCCS'

transitional services department and the New York State OMH discharge planning department,
(*see* Compl. at 16, 18), and he received no responses to his complaints.  (*Id.* at 16, 18.)
However, these allegations, standing alone, are insufficient to plausibly establish that any of the
named State Defendants were "deliberately indifferent" to Plaintiff's situation, as the Complaint
does not allege that any State Defendant personally knew about Plaintiff's prolonged
incarceration or, in the case of supervisors, was grossly negligent in supervising the employees
who reviewed Plaintiff's complaints or otherwise knew about his claims.  *See Armstead v. Dep't
of Corrs. Comm. Supervision,* No. 13–CV–88, 2013 WL 1312017, at *4 (E.D.N.Y. Mar. 28,
2013) (dismissing complaint because it "offer[ed] no facts to show that either of the supervisory
defendants actually received and read [plaintiff's correspondence], or that they were at any point
aware of the circumstances of his detention"); *Beahm v. Burke,* 982 F. Supp. 2d 451, 461 (E.D.
Pa. 2013) ("[I]n order to obtain relief for continued detention under § 1983, a prisoner must show
that a prison official was aware of his overstay and was deliberately indifferent in rectifying the
problem."); *Lozada v. Warden Downstate Corr. Facility,* No. 10–CV–8425, 2012 WL 2402069,
at *3 (S.D.N.Y. June 26, 2012) (dismissing prolonged-incarceration claim against a warden
because "[a] prison official cannot be personally liable under § 1983 on the basis of respondeat
superior or simply because he is atop the prison hierarchy," and the complaint "fail[ed] to allege
[the warden's] direct involvement" in the prolonged incarceration); *Peterson,* 469 F. Supp. 2d at
166 (granting summary judgment where plaintiff was "unable to show that any of [the
defendant's] actions . . . caused his extended incarceration").

Even if the Court were to find that Plaintiff had met the deliberate indifference
requirement, the Complaint would still fail to plausibly state an Eighth Amendment claim given
that Plaintiff was not held beyond his *maximum* sentence.  *See Calhoun*, 999 F.2d at 654

(holding that five-days of incarceration beyond the plaintiff's maximum sentence "did not inflict a harm of a magnitude that violates a person's eighth amendment rights" (internal quotation marks omitted)); *Lozada*, 2012 WL 2402069, at *2 (holding that an "additional seven days of incarceration" beyond a prisoner's maximum sentence, "is insufficient to bring an Eighth Amendment claim"); *Brims v. Burdi*, No. 03-CV-3159, 2004 WL 1403281, at *2 (S.D.N.Y. June 23, 2004) (holding that six days of imprisonment beyond the plaintiff's maximum sentence "is not a harm of sufficient magnitude to implicate the Eighth Amendment"); *cf. Gilblom v. Gillipsie,* No. 08–CV–1672, 2010 WL 1813494, at *9 (W.D. Pa. Apr. 6, 2010) (noting that "[c]ases in which an Eighth Amendment claim has been recognized in the context of an overstay [in prison] involve significant periods of time," and citing cases involving 145 days to two years of prolonged confinement), *adopted by* 2010 WL 1813483 (W.D. Pa. May 5, 2010), *aff'd,* 435 F.App'x 165 (3d Cir. 2011). Given this reluctance to find an Eighth Amendment violation in the context of confinement beyond a *maximum* release date, the Court is unwilling to hold that a plaintiff held beyond his conditional release date could rise to the level of cruel and unusual punishment.

### 3. Claims for Injunctive Relief as to All Moving Defendants

Plaintiff's claims for injunctive relief against both State and City Defendants in the form of his immediate release from confinement and placement in transitional housing are also dismissed. Plaintiff was released from DOCCS custody in February 2017, and is no longer incarcerated in any DOCCS facility. (*See* Feb. 22 D'Angelo Letter 1.)[9] Thus, Plaintiff's request

---

[9] Plaintiff's address listed on the docket is now Riker's Island Correctional Facility, though the Court has not received any documentation related to his current incarceration. Irrespective of his current residence, Plaintiff was released from DOCCS custody for the conviction and sentence at issue here in February 2017 to Ana's Place Men's Shelter in The Bronx.

for injunctive relief in the form of his immediate release is dismissed as moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Pugh v. Goord*, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008) (explaining that "[w]here a prisoner has been released from prison, his [or her] claims for injunctive relief based on the conditions of his [or her] incarceration must be dismissed as moot"); *see also Martin–Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

## III. Conclusion

For the foregoing reasons, the Court grants State and City Defendants' respective Motions To Dismiss. In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice. If Plaintiff wishes to file an Amended Complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order. Failure to do so will likely result in the dismissal of the claims against these Defendants with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 43, 47), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.

SO ORDERED.

Dated: December 19, 2017
      White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

24